The next case today is Andrea Joy James v. Merrick B. Garland, Appeal Number 20-1666. Attorney Trina Realmuto, please introduce yourself for the record and proceed with your argument. Thank you. May it please the Court, Trina Realmuto on behalf of Petitioner. With the Court's permission, I would like to reserve two minutes of rebuttal. Yes, you may. Thank you. Andrea James is a 55-year-old woman who's lived in the United States for 32 years. She has diabetes and high blood pressure. She represented herself in removal proceedings from detention. After she lost her protection claims before the immigration judge, by regulation, she had 30 days to file an appeal. During that appeal period, however, the world experienced the outbreak of the COVID-19 pandemic, and Massachusetts declared a state of emergency. Having diabetes put Ms. James at a heightened risk of contracting the virus, as did the lack of COVID protections at the Bristol House of Corrections, which led to a strike, subsequent chaos, and a class action lawsuit challenging the lack of protections. In these unprecedented times, Ms. James, still acting pro se, managed to file an appeal. On the appeal form, she indicated that she would file a written brief. Knowing the appeal would arrive late, she sought to equitably toll the appeal deadline and also filed a motion to accept the appeal late. Without setting a briefing schedule or providing a transcript, a single BIA member, Hugh Mullane, dismissed the appeal as untimely. The Court should reverse that decision for two reasons. First, the decision does not acknowledge, let alone address, tolling. By neglecting his duty to consider the arguments presented, Board Member Mullane committed an error of law warranting remand. Second, if the Court does not remand on the failure to address tolling, then it should remand because the decision deviates from the Board's subtle course of self-certifying late appeals in similar and less compelling circumstances than those that Ms. James presented. On your first point, could you explain for us, how does the equitable tolling standard differ from the certification standard that was applied? Sure. Can you get different outcomes, or are you talking about simply different available review? Absolutely. Because the tests are different, you can certainly get different outcomes, and you can't assume that the decision on certification would be applied to the decision on tolling. So if you think about it, tolling is the litigant's tool, where certification is the agency's tool. Under tolling, a litigant has to show due diligence and exceptional circumstances that prevented timely filing. Those standards as to what constitutes diligence and what constitutes an extraordinary circumstance are governed by Supreme Court and this Court's precedent as to what those factors are. Not only that, however, but the Courts allow for a more robust judicial review of tolling claims. And in fact, just last term in Guerrero-Las Brulas, the Supreme Court said that equitable tolling claims are questions of law subject to federal court review. So Ms. James, who is proceeding pro se, fully intended to file a brief to flesh out the tolling claim, would have been able to explain why she could demonstrate extraordinary circumstances, which this was an extraordinary period in this country's history, and why she acted diligently under those circumstances. The government also seems, if I read the government's brief correctly, I think they seem to question whether she requested in substance equitable tolling. Sure. So I think whether she requested it has to be viewed in the context of the fact that she was a pro se litigant and pro se litigants' claims must be construed liberally to protect against loss of the claim. Four minutes remaining. Sorry. Ms. James indicated in the Notice of Appeal supplement that the deadline was a claim processing rule that required an individualized administrative review, and she also indicated that she was requesting equitable tolling. As a pro se litigant, that was enough to preserve the tolling claim. In the Notice of Appeal, she used the words equitable tolling? Correct. In the supplement, which is part of the Notice of Appeal, she literally said respondent has requested equitable tolling of the appeal deadline. Excuse me. I understand that. Is this correct that most of the circuits to address this have said that it's non-jurisdictional, the 30-day rule? Right. Absolutely. Have they addressed whether or not the equitable tolling is different from the self-certification? The Second Circuit did that in the Adepo decision. They fleshed out what's required for tolling and why the deadline is subject to tolling. The other circuits that Your Honor is mentioning has talked about why the deadline is a claim processing rule, and we know from Supreme Court law that claim processing rules have the presumption of being subjected to tolling. So all you're asking for is a remand for the BIA to expressly deal with the issue of equitable tolling. And we would request that this court instruct the BIA to allow her to brief whether tolling at the deadline is warranted. We think that's important because in the past when this court and other courts have instructed the BIA to do something, I think it's possible in this case as well that if you were to instruct it that way, that the board would accept the issue and then just grant certification because it's easier for them to do. But we would ask that the court include those instructions in its work. Are there any regulations to the contrary that require a briefing be filed at an earlier time? In other words, you're asking us to issue an instruction. Are we overruling any established procedure if we said you have to let her file a brief? No, I think we're just asking for the court to do the same thing it did in Romar and Moliero, which is remand with instructions to consider the equitable tolling claim. And this court does that all the time. I had a question about the record, and I'm sure there's an explanation for it, but it looked as if she waived her right to appeal. Is that wrong on the appendix, page 15? Right, so as an initial matter, this court's review is limited to what the board reviewed. So under Chenery, the board didn't think that there was a waiver of appeal. They went ahead and adjudicated the claim. And so this court's review is limited to Chenery, so it can't sort of look behind the basis of the board's decision. But at the same time, I would say that it is a little bit confusing. It says that it was waived, but it also says the wrong appeal deadline, and that appeal deadline was written there presumably because she intended to appeal. We don't have a transcript of this case because it was dismissed before there was ever a transcript. It's a little unclear, and the IJA didn't even sign the decision that's in the record. But for all intents and purposes, she did file that appeal, and under the statute, the appeal, the board's decision is finally final, and this court has jurisdiction. And if I may, sorry, were you going to ask a question? I am, but you can finish. That's fine. Well, my understanding is we have never held as a circuit that there is equitable tolling under this provision. Is that right? You are the only circuit to hold that. In a motion to reopen context, it has expressly issued a decision on tolling. In the appeal context, the Second Circuit is the only circuit to have ruled on an ad epo decision to say that this deadline is subject to tolling. So you would be joining the Second Circuit if you so held. Right. No, I was thinking of just aside from that, but the current state of the law in our circuit is just silent on whether there's tolling, correct? Mm-hmm. Okay. Has the board taken a position as to whether there's tolling? No. The board has — sorry, let me just say. The board in 2006 issued a decision in Leodov where they said that that deadline can't be extended. But Leodov cannot withstand judicial scrutiny because from 2006 to present — That's time. So here's, I guess, the practical question, which I'm thinking that what we have done, my understanding in the past, is we've assumed tolling exists. But then we found that the factual prerequisites for meeting the tolling, if we were to recognize it, haven't been met in any case, and therefore we've never had occasion to resolve whether tolling exists. But you can't do that here because you can't do that here. That's what I'm asking. If we are to remand, do we have to decide whether tolling exists? Because I'm just trying to figure out the state of play. The government doesn't seem to make an argument to us that tolling is legally barred, and the BIA doesn't seem to hold that it's legally barred. So it's just uncertain to me what the view of the board is as to whether tolling exists or not. In that setting, I suppose we could remand on the thought that we don't have a reason if she has a — She's asserted tolling. We have no reason to think they wouldn't entertain that. Therefore, we could just remand for them to consider it without deciding whether tolling exists or not. Or are you saying that we need to decide whether tolling exists if we're going to remand? So I think that this court could remand without deciding the question. However, if the court were inclined to bypass the ordinary remand rule, which allows the agency to address it in the first instance, I think it could do here. So here, for two reasons. Well, three reasons, actually. The government doesn't dispute it, nor can they dispute it, because of the Supreme Court case law that has come out since the matter of Leadoff. But secondly, agency jurisdiction or agency expertise is not at play here, because jurisdiction is not a question the agency has expertise over. And secondly, the board had an opportunity to address it, but just decided not to. I mean, it was raised. But either which way, right, if you want to talk about why tolling exists, we can do that. But at the same time, you know, the board didn't address it in this instance. And so the board, the remand could be for the board to do that. That's one other question. I forget what the ground of removal is. It has to do with a controlled substance offense. But she's applying for her taxes. How old was that offense? It's rather old. Has there been any – this, I take it, did not go into mediation? I mean, we would happily put this case in mediation. The offense is from 1998. And she's claiming her claim is for protection, right? So particularly here, when you have a person who her best and only chance is protection from the United States, to dismiss her claim where the only adjudicator was the immigration judge and no one else has looked at the merits of the protection claim, that's particularly harmful to pro se litigants, right? Thank you. I think you've reserved two minutes for rebuttal. Thank you. Thank you. Attorney Realmuto, if you could mute your audio and your video at this time. And, Attorney Meyer, please unmute your device. And introduce yourself on the record to begin. Jeffrey Meyer for the respondent. May it please the court. Am I coming through? Yes, you are. Okay. May I begin? Certainly. Okay. I'm prepared to rest on the briefs. I feel like we've briefed this. I could make a couple points of emphasis, but I'd be interested to make myself available for questions from the court. Well, let's take Judge Barron's question. What's your position on whether there's equitable tolling? She walks out of the immigration hearing with the decision of the IJ in her hand, and as she rounds the corner, she's hit by a truck and is put in a coma for 35 days and then appeals. Is there equitable tolling? No. Our position is the deadline is not subject to equitable tolling. And so do you take the position it's not a claims processing deadline? Yes. And that's based on Leotard in the matter of Leotard? Yeah, I believe that's the department's position on that. Did you brief that issue to us? The issue of whether the department's current position that there's no equitable tolling for this deadline? We cited that there's no authority in the circuit for it, even if there was. But is the government's current position that there is no equitable tolling? Yes. I'm puzzled as to why that wasn't in the brief then. I would thought the first line of the brief was this whole case makes no difference because there's no equitable tolling. End of story. Well, my inclination was that we pointed out that there's no authority for it. So I guess we phrased it. But there's no authority against it. That's true. So has the BIA itself weighed in and said that's still our position? I don't believe so, Your Honor. So this is just your position? Yeah, the department's position. You're representing the department's position now, even though it's not in your brief? The way we phrased it was that there was no authority to allow equitable tolling, but we didn't go so far as to say, as you point out, there's authority against it. I'm just asking, does the United States have a current position as to whether equitable tolling is prohibited? My belief is that the position is that it is prohibited. But we're not asking for your belief. I mean, if the department has a position on this, it would be quite known. It wouldn't be a matter of your personal belief. It either does or doesn't. It's something you can point us to. I can't point you to anything. Well, if we were to remand this because there was a substantial enough question, would it be on to the board as to whether or not it recognizes equitable tolling? Or assuming we join the second, whether or not this qualifies? In other words, would the BIA want to first crack at this? Oh, I believe so, Your Honor. I mean, I feel like I'm pulling teeth here. I mean, so is the position that Leondocke is open to reexamination by the board? I don't know the answer to that. I'm sorry. So let's assume, let's assume, and I know you're not going to, let's assume there is a possibility of tolling what is a claims processing 30-day limit. Isn't it clear that this pro se petitioner asked for equitable tolling? Not really. Did she use the words equitable tolling? She filed what she called a supplemental notice of appeal, and she discusses it. I think I asked a pretty simple question. Did she use the words equitable tolling? Oh, yeah. In the context of. Of a writing she filed with the board? She triggered the automatic stay, but she never makes a case for equitable tolling in her motion to file the brief. Let's take it a step at a time. She did ask for equitable tolling. Yeah. Do you want me to read it to you? Well, no, your agreement with me is fine on that. I've read it. It seemed pretty clear. She mentions equitable tolling. Yeah. She seeks it. She mentions equitable tolling in the context of asking if she could have more than the 30 days to perfect her appeal. Actually, no. It comes in the supplement to notice of appeal, and she never mentions it in the motion to file the late appeal. Well, what do you think she was asking be tolled? She asked for self-certification. Let me see. Oh, she phrases it for you. I don't want to misspeak. She mentions the grounds. She mentions the high blood pressure, the diabetes, the incarceration.  I think she was asking the court to accept the late appeal through self-certification. That's how the board read it. Why did she mention equitable tolling? She mentions that in the notice of appeal, but not in the motion for the late appeal. Why do you think she mentioned it? I don't know why. Come on. Isn't it plainly clear that she was asking that equitable tolling be invoked to permit her appeal to go forward, notwithstanding she missed the 30 days? Well, when we briefed it, we assumed that, you know, she had raised it. So, I'm not arguing that she did. It sounded like you were. Oh, I'm sorry. So, since she raised it, then is it also clear the board did not decide under any equitable tolling doctrine whether she should receive it or not? Yeah, she never makes the case for equitable tolling. That wasn't my question. My question was, did the board ever decide on her request for equitable tolling? They decided they addressed everything she raised, which was all the factors. And did they mention equitable tolling in the decision? No. And did they apply anything that looked like an equitable tolling standard? No. Okay. Can I ask you the waiver point since that is jurisdictional? You don't raise it. Is that because the record is too unclear? The judge didn't sign it? Where she waived the appeal? Yeah, in that little checklist at the bottom. I see it. Yeah, and, you know, I believe they thought she waived it because that's why there is no record generated. Like, they don't generate a record for every case, only if there's going to be an appeal. So, I think that's probably consistent with the belief that she had waived it. But you never raised that, right? No. And I'm assuming because it's a little unclear in the record, so it wasn't a clear, involuntary waiver of appeal? Unambiguous or whatever the waiver has to be? Yeah, because she files this notice eventually, late. So, yeah, I don't know if she's revoking the waiver or what she's thinking. Does the department treat pro se litigants differently or not? When you say the department, do you mean the board? Or are we talking about the Justice Department? Who do you represent? The respondent, which is Attorney General. Okay, so the Attorney General. Does the Attorney General's view that pro se litigants in the immigration context should be treated differently than a counsel litigant? Well, I think when it comes to things like waiver, yeah. How about reading their files? Reading their files? I don't understand. Well, if I read a filing, if I file something, I'm a pro se litigant. Do you sort of try and read it in the light most favorable to the litigant, if it's a pro se or not? Well, like here, for example, and I think this was Judge Kayada's point. You know, she raises this kind of boilerplate on the supplemental address of appeal. So, yeah, we addressed it. You know, it's not much of a, you know, maybe if she was representative, it wouldn't hold. We might argue waiver. So, I see. So, the way you want us to decide the case is whether we read the BIA's decision to have addressed her fairly raised equitable tolling claim. And you think it did? Yeah, I think they did. And you think if we read the BIA not to have done that, then the BIA erred because they would not have addressed the claim she raised. Is that right? Well, the problem is she never tries to make the claim. Like, there's nothing for the board to analyze. Okay, you're making it a little hard. I thought you were saying that you read pro se litigants' filings with some deference to the fact that they're pro se. And that that's why you didn't treat her as having waived her equitable tolling claim. I thought you were then saying because she hadn't waived her equitable tolling claim, it was before the BIA. And then the question would be, did the BIA address it? You filed a brief saying they did, in effect. If we were to disagree with you, that would suggest to me that it would follow that the BIA erred by never having addressed her equitable tolling claim. But then you just said, no, that's not right. And I don't get the last part. It seems like the last part follows from everything else you said. Yeah, I think so, too. I think I misunderstood you. Okay, great. Sorry. And when you say she didn't develop her claim, I mean, she said, let's have some context here. We're talking about in the breakout of one of the most significant disruptive events that occurred in the 20th century in this country, at least since World War II. And courts all over the country are suspending filing deadlines for cases in which parties are represented by some of the best lawyers in the country. And you're telling us that when she files something saying, I'm in prison and COVID's broken out and things are all uproar, that that isn't presenting a claim that you think the board can get its hands around? It doesn't make a lot of sense. She filed a claim that said she was in prison. But there was nothing about the COVID or asking the court for anything related to that. I mean, your department has asked our court for extensions in the course of the pandemic. I'm just pointing out that she did not. And you don't think the BIA was aware of the COVID and the disruptive nature of it? I don't know the answer to that. I mean, presumably everybody knew, right? Yeah, for example, our court was sua sponte issuing extensions, even without requests. It just seems a little odd that the board entertained this request and then didn't know what the basis of the request was in the context in which it was made and so denied it for that reason, we should infer. I would think at the very least we would give the board an opportunity to say that a pro se person in prison when COVID broke out doesn't deserve a few extra days to file her complaint. Determine exactly. File a repeal. Exactly. I think it was due the week the world closed down. Or at least this country. She files on April 6th. Right, but it was due, was it March 18th or March 20th, depending on the year? Yeah, March 20th. So the very beginning, I guess. But yeah, you know, she never asked for any of that. So the board didn't address it. And, you know, given the deadlines here, it's a pretty good guess. I don't think we've relied. It's a pretty good guess. The board members themselves were at home, not going into work that day. Yeah, I don't know the answer to that either. I have nothing further unless you have more questions. Can I ask, is she in custody still? No. No. No. And just on the ground of removal, the ground of removal is the 20-year-old, 10-decade-old drug conviction? I think there were two grounds. There's two drug convictions, and there's being President of the United States without being admitted or paroled. Yeah. And how old is, and she's how old? I think she's 34. Is that right? I have it in my brief. Do you know if she's one of the ones that Judge Young released from Bristol? No, I don't know that. And I forget, does she have U.S. citizen children? I'm trying to verify the age for you. Okay. I don't have anything in the record to show that she has family. I'm sorry. Last question, does the department have a view about mediation? I don't. I mean, if you're asking me, like I haven't bounced it off anyone, like should we throw this in mediation? So are you asking me personally? No, I'm asking you as the United States. I don't have a view. Okay. Sorry. Thank you, Mr. Myers. Thank you, Your Honors. I'll mute. At this time, Mr. Myers should mute, and Attorney Realmuto, please unmute and reintroduce yourself for your two-minute rebuttal. Thank you. Trina Realmuto on behalf of Petitioner. Ms. James is 55 years old. She was released from Bristol. She was one of the first wave of immigrant detainees released by Judge Young after he looked at her diabetes and high blood pressure and did an individualized assessment of her health condition. Bristol has since been closed by the federal government. It no longer can house immigrant detainees due in part to some civil rights abuses that were taking place in that facility. She has one U.S. citizen daughter that is in the record, and I believe she also has a U.S. citizen granddaughter. That is not, would be in the record on remand. I just want to just briefly mention about this concept that she didn't raise the claim. She is a pro se litigant. She took the box on a form saying she could file a brief, and in fact, that form says you will be expected to file a written brief or statement after you receive a briefing schedule. So it's fully reasonable for her to read that statement and believe that she would have an opportunity to flesh out her claims. Now with respect to the government's position that it doesn't have a position on equitable, that the court doesn't have a position on equitable tolling, there is the 2006 precedent decision in Leodolph which says it doesn't think it can extend the deadline. But then it goes on to say, but we can extend the deadline because we can do certification. If a rule is purely jurisdictional, it cannot be extended. So that is internally inconsistent. Not only that, but that decision predates Holland, Union Pacific, Henderson, where the Supreme Court says filing deadlines are quintessential claim processing rules. In addition, the BIA didn't grapple with the actual statute and legislative history where Congress and the legislative history says we think the appeal deadline should be 30 days with the availability to extend it to 90 days. Our position is the BIA should issue a decision on tolling. It has to find that that deadline under Supreme Court precedent is available. It hasn't done so yet. And a last point about that decision relies on a decision called United States v. Locke from 1985, which itself recognizes the availability of equitable tolling or filing deadlines in Note 10. And so for all of these reasons, we think that equitable tolling is available and Ms. James would welcome the opportunity to prove that argument for the BIA. Does the court have any further questions? Thank you, Ms. Realmuto. Thank you. That concludes argument in this case. Attorney Realmuto and Attorney Meyer, you should disconnect from the hearing at this time.